UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US INVENTOR, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES PATENT AND<br>TRADEMARK OFFICE,<br><br>　　　　Defendant. | Civil Action No. 21-cv-2893 (TSC) |

**MEMORANDUM OPINION**

　　Plaintiff US Inventor, Inc.—a nonprofit organization that seeks to educate inventors, lawmakers, agencies, and courts on matters affecting inventors—filed suit against the United States Patent and Trademark Office, alleging violations of the Freedom of Information Act ("FOIA"). Having considered the record and the briefing, the court will DENY Plaintiff's Motion for Summary Judgment, ECF No. 15, and GRANT Defendant's Cross Motion for Summary Judgment, ECF No. 21.

　　　　**I.　　BACKGROUND**

　　This case concerns two FOIA requests Plaintiff submitted in April 2021—Requests F-21-00100 and F-21-00102. Def.'s Statement of Undisputed Material Facts, ECF No. 21-2 ¶¶ 1–6. The first request addressed inter partes review ("IPR") proceedings involving tribal sovereign immunity, *id.* ¶ 1, and the second addressed IPR proceedings involving state sovereign immunity, *id.* ¶ 4. Plaintiff filed suit on November 2, 2021, after more than six months passed without any document production from Defendant. Compl., ECF No. 1 ¶ 29. It alleges that Defendant violated FOIA by failing to produce documents within the statutory time limit yet still

retaining the search fees it assessed against Plaintiff. *Id.* ¶¶ 32–39. "Over the next year and a half, Defendant made a series of productions, with certain redactions under Exemption 5, based on the deliberative process privilege, attorney-client privilege, and work-product doctrine, as well as under Exemption 6." Def.'s Statement of Undisputed Material Facts ¶ 8; *see* Vaughn Index, ECF No. 21-12. The parties then reached an impasse regarding the sufficiency of Defendant's production and filed cross motions for summary judgment. *See* Joint Status Report, ECF No. 13; Pl.'s Mot. for Summ. J., ECF No. 15; Def.'s Cross Mot. for Summ. J., ECF No. 21.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to material fact and the movant is entitled to judgment as a matter of law." "FOIA cases typically and appropriately are decided on motions for summary judgment." *Georgacarakos v. FBI*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (quotation omitted). In reviewing a motion for summary judgment in a FOIA case, the court must view the facts in the light most favorable to the requester. *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) ("*Weisberg II*"). Unlike non–FOIA cases, the defendant, rather than the plaintiff, bears the initial burden. 5 U.S.C. § 552(a)(4)(B). Once the defendant meets that burden, "the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld . . . records." *Span v. U.S. Dep't of Just.*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 (1989)).

### III.  ANALYSIS

A.  **Reasonably Calculated Search**

Plaintiff first contends that Defendant failed to conduct an adequate search for responsive records.  "The fundamental principle animating FOIA is public access to government documents."  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (citation omitted).  "The law in this circuit on agency obligations under FOIA" "embraces" this purpose even though "the number of requests for information may pose burdens on agencies."  *Id.*  To prevail on summary judgment, an agency must show "that it has conducted a search reasonably calculated to uncover all relevant documents."  *Weisberg v. U.S. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) ("*Weisberg I*").  To do so, the "agency must show that it made a good faith effort," "using methods which can be reasonably expected to produce the information requested."  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("*Oglesby I*").  This reasonableness standard requires an adequate search, not a perfect one—the agency is not obliged to "search every record system," *id.*, or "speculate about potential leads," *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 389 (D.C. Cir. 1996).  Moreover, the plaintiff may not prevail by showing only that "further documents might conceivably exist."  *Weisberg I*, 705 F.2d at 1351 (quoting *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982) (per curiam)); *see Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[F]ailure of an agency to turn up one specific document in its search does not alone render a search inadequate.").

An agency "may rely upon affidavits to show it has conducted a reasonable search, as long as they are 'relatively detailed and nonconclusory and submitted in good faith.'" *Weisberg I*, 705 F.2d at 1351 (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1979)).  For example, the D.C. Circuit in *Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1185–86 (D.C. Cir. 1996) ("*Oglesby II*"), concluded that the FBI's search for records was adequate despite the

plaintiff's concern that a "section tickler" noted in a document meant that more responsive records existed. The court pointed out that the agency did not locate any additional documents and had informed the plaintiff that the "section tickler" reference "did not indicate that any other responsive documents existed." *Id.* The court refused to "second-guess FBI's affidavit" regarding the meaning of this "section tickler" reference. *Id.* at 1186; *accord id.* (refusing to second-guess State Department's affiant regarding how a given repository could be searched).

By contrast, the D.C. Circuit found the affidavit in *Oglesby I*, 920 F.2d at 68, inadequate because it merely stated: "Based upon the information contained in Mr. Oglesby's letter, and consistent with customary practice and established procedure, a search was initiated of the Department record system most likely to contain the information which had been requested." Among other flaws, that conclusory affidavit did not "identify the terms searched or explain how the search was conducted." *Id.*; *accord Steinberg v. U.S. Dep't of Just.*, 23 F.3d 548, 551–52 (D.C. Cir. 1994) (agency affidavits that do not "describe in any detail what records were searched, by whom, and through what process" are inadequate at summary judgment).

A court should deny summary judgment "if a review of the record raises substantial doubt" regarding the reasonableness of the search, "particularly in view of 'well defined requests and positive indications of overlooked materials.'" *Valencia-Lucena*, 180 F.3d at 326 (quoting *Founding Church of Scientology v. NSA*, 610 F.2d 824, 837 (D.C. Cir. 1979)). Accordingly, in *Valencia-Lucena*, the D.C. Circuit concluded that summary judgment for the agency was inappropriate where the defendant had told the plaintiff that the records requested "may be located at the federal records center in Georgia," but then declined to search that office. *Id.* at 327. The court held that "[i]t is well-settled that if an agency has reason to know that certain places may contain responsive documents, it is obligated under FOIA to search" those locations

"barring an undue burden." *Id.* This principle, however, requires proof in the record; "mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *Iturralde*, 315 F.3d at 316 (quoting *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)); *accord Steinberg*, 23 F.3d at 552 ("[M]ere reference to other files does not establish the existence of documents that are relevant to [the plaintiff's] FOIA request.").

"Once an agency has made a *prima facie* showing" of an adequate search, "the burden shifts to the plaintiff to provide countervailing evidence sufficient to raise substantial doubt concerning the adequacy of the agency's search." *Rodriguez v. Dep't of Defense*, 236 F. Supp. 3d 26, 35 (D.D.C. 2017) (quotation omitted). Thus, under this burden-shifting framework, once the agency shows the search was adequate, the court will grant it summary judgment unless the plaintiff can provide evidence to the contrary.

Defendant's declaration demonstrates that it conducted an adequate search as to both of Plaintiff's FOIA requests. Regarding Plaintiff's first request, Defendant circulated it to Administrative Patent Judge ("APJ") Scott Moore, who initiated the collection of responsive records within the Patent Trial and Appeal Board ("PTAB"). Decl. of Kathryn Siehndel, ECF No. 21-13 ¶¶ 17, 20 ("Siehndel Decl."). Judge Moore sent the request to almost all the individuals named in the request along with a Patent Quality Review Assurance Specialist and additional APJs who were not named in the request but "would likely have been involved in any policy determinations concerning sovereign immunity." *Id.* ¶ 20. The only individual named in the request who was not initially contacted no longer worked at the PTAB. *Id.* Defendant's declarant, however, later confirmed with that individual that he had no responsive records. *Id.* These individuals searched their files by searching for the inter partes review numbers

enumerated in the request and/or using keywords that correlated with the request, depending on the individual and the type of files. *Id.* ¶ 21. Of all the records these searches produced, Defendant determined that only 63 pages were responsive. *Id.* ¶¶ 21, 24, 26.

The second request proceeded much like the first. Defendant sent it to APJ Moore, *id.* ¶ 40, who circulated it to the listed APJs who still worked at PTAB, the Patent Quality Review Assurance Specialist, and two additional APJs likely to have been involved, *id.* ¶ 44. These individuals searched their files, and Defendant eventually determined that it had 428 pages of responsive records. *Id.* ¶¶ 45, 48.

This declaration suffices to make a prima facie showing of an adequate search. *See Rodriguez*, 236 F. Supp. 3d at 35. Unlike in *Ogelsby I*, 920 F.2d at 68, the declaration explains the steps Defendant took to recover responsive records, including specific terms searched by the identified individuals. *E.g.*, Siehndel Decl. ¶ 21 (individuals searched the terms "sovereign immunity," "Mohawk," or "tribe" along with reviewing their files for the proceedings enumerated). Moreover, nothing in the declaration indicates that Defendant identified sources of potentially responsive documents yet failed to search them. *See Valencia-Lucena*, 180 F.3d at 326–27.

Plaintiff contends that Defendant failed to conduct an adequate search because it did not release records related to the dates APJs were assigned to panels for the proceedings. Mem. in Supp. of Pl.'s Mot. for Summ. J., ECF No. 16 at 15–16 ("Pl.'s Mot."). Defendant declares that it did not know that this information was embedded in its case management system until Plaintiff filed its motion. Siehndel Decl. ¶ 29. Defendant has since provided Plaintiff with this data for the first request, and "explained in detail the reason it doesn't exist" for the second request, *id.* ¶ 57: the enumerated APJ was added for a narrow purpose, and therefore was not entered into the

paneling database, *id.* ¶ 50.  Plaintiff does not contend in its reply that Defendant's explanation for why that record did not exist was inadequate or unpersuasive.  Consequently, the court will grant Defendant summary judgment as to the adequacy of its search.

    **B.**    **Exemption 5**

Plaintiff next claims that Defendant incorrectly withheld records under Exemption 5, which provides agencies need not disclose "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  This "deliberative process privilege shields documents that debate and discuss proposed agency decisions before they are finalized." *Campaign Legal Ctr v. U.S. Dep't of Just.*, 34 F.4th 14, 22 (D.C. Cir. 2022).  "Ultimately, the privilege is designed to improve governmental decisionmaking by encouraging public servants to speak candidly with one another and to fully flesh out the reasons for and against potential agency actions before they are taken." *Id.* at 23.  To fall under this exemption, "a document must be both predecisional"— meaning it was "generated before the agency's final decision"—and "deliberative," meaning it "reflects the give-and-take of the consultative process." *Id.* (quotations omitted).

    *i.*    *Communications between agency officials and panel-member APJs*

First, Plaintiff argues that Defendant incorrectly withheld records reflecting discussion between APJs and agency officials regarding the proceedings at issue in its FOIA requests.  The parties do not dispute that these communications were both generated before the agency's decision and reflect the consultative process.  *See id.* at 23.  Plaintiff argues, however, that these records may not be withheld because they reflected improper *ex parte* communications.  Pl.'s Mot. at 17–21.  The court agrees with the parties that, "where there is reason to believe the documents sought may shed light on government misconduct," the deliberative process privilege

"is routinely denied." *In re Sealed Case,* 121 F.3d 729, 738 (D.C. Cir. 1997) (quotation omitted). *But see* Notice of Supplemental Authority: *Malone v. U.S. Patent and Trademark Office*, ECF No. 32-1 at 5 (concluding that deciding the "legality and constitutionality of these communications" is unnecessary to decide whether they were properly withheld under FOIA). The court disagrees, however, with Plaintiff's contention that these communications were improper.

The Administrative Procedure Act ("APA") provides that an APJ may not "consult a person or party on a fact in issue, unless on notice and opportunity for all parties to participate." 5 U.S.C. § 554(d)(1). In construing this provision, the Supreme Court has explained that an administrative law judge may not "consult any person or party, including other agency officials, concerning a fact at issue in the hearing, unless on notice and opportunity for all parties to participate." *Butz v. Economou*, 438 U.S. 478, 514 (1978). The Federal Circuit has also considered this concept in the due process context, holding that "[t]he introduction of new and material information by means of *ex parte* communications to the deciding official undermines the public employee's constitutional due process guarantee of notice . . . and the opportunity to respond." *Stone v. FDIC*, 179 F.3d 1368, 1376 (Fed. Cir. 1999).

This doctrine does not prohibit the communications at issue here. For one thing, the D.C. Circuit has held that *Stone* is "confined" to "instances where the decider received 'new and material' information" to consider in its decision, *Sw. Airlines Co. v. TSA*, 554 F.3d 1065, 1074 (D.C. Cir. 2009), and Defendant's declarant stated that the withheld communications involve "[a]t most" "legal and policy issues across cases"—not "new factual information" about any "specific" proceeding, Siehndel Decl. ¶ 67. For another, the APA definition of the "persons" an APJ may not consult "on a fact at issue" categorically excludes agency officials. Section 551

defines "person" to include "an individual, partnership, corporation, association, or public or private organization *other than an agency*." 5 U.S.C. § 551(2) (emphasis added). The agency officials here are members of "Agency leadership and/or management," who speak on behalf of the agency. Def.'s Mem. of P. & A. in Opp'n to Pl.'s Mot. for Summ J. & in Supp. of Cross Mot. for Summ. J., ECF No. 21-1 at 12 ("Def.'s Cross Mot."); *accord* Siehndel Decl. ¶ 67 (communications involved Defendant's "officials"). Consequently, another court in this district has held that communication between a deciding official and an agency official was not improper because it merely "presented the evidence to which [plaintiff] already had the opportunity to respond during prior steps of the [administrative] process and offered the agency's rebuttal to [plaintiff's] arguments," and the communication was not "the type likely to result in undue pressure upon the deciding official to rule in a particular manner." *Trinka v. McDonough*, No. 21-2904 (RC), 2023 WL 6160053, at *16 (D.D.C. Sept. 21, 2023) (quoting *Stone*, 179 F.3d at 1377). So too here.

Plaintiff also argues that these communications are prohibited by regulation. Pl.'s Mot. at 20; Pl.'s Reply in Supp. of Mot. for Summ. J. & Resp. to Def.'s Cross Mot. for Summ. J., ECF No. 26 at 12 ("Pl.'s Reply"). The regulation provides: "Communication regarding a specific proceeding with a Board member defined in 35 U.S.C. 6(a) is not permitted unless both parties have an opportunity to be involved in the communication." 37 C.F.R. § 42.5(d). Section 6(a) defines the "Board" as including the Director, Deputy Director, Commissioner for Patents, Commissioner for Trademarks, "and the administrative patent judges." This regulation does not support Plaintiff's position because it is best read to prohibit to communications between *parties* and Board members; not among Board members. Defendant's guide for practitioners implies as much, explaining that this regulation captures "[a]ll substantive communications with the Board

regarding a proceeding," but does not extend to "[m]inisterial communications with support staff," "conference calls or hearings in which opposing counsel declines to participate," or "informing the Board in one proceeding of the existence or status of a related Board proceeding." Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48,758 (Aug. 14, 2012). Each scenario contemplates a party communicating with a Board member—not Board members communicating with each other. Construing the regulation the way Plaintiff does would render it absurd by prohibiting, for example, the Director and the Deputy Director—both Board members—from discussing any ongoing proceeding without involving both of the parties. *See, e.g.*, *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1068 (D.C. Cir. 1998) ("[S]tatutes are to be read to avoid absurd results.").

        *ii.*    *Communication from counsel and parties to Defendant*

Second, Plaintiff argues that Defendant improperly withheld communications sent from counsel representing patent owners involved in the proceedings as well as Plaintiff's President to the Trials@USPTO.GOV email address. Pl.'s Mot. at 22–24. After Plaintiff filed its motion, Defendant agreed with Plaintiff's assessment and released the unredacted versions of those emails. Siehndel Decl ¶¶ 71–72. "[T]he release of requested documents to a plaintiff renders its FOIA suit moot 'with respect to those documents.'" *Newport Aeronautical Sales v. Dep't of Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012) (citation omitted). Consequently, this claim is moot.

        *iii.*    *Email subject lines*

Third, Plaintiff argues that Defendant improperly withheld email subject lines. *See* Pl.'s Mot. at 23–26. According to its declarant, Defendant "unredacted approximately two dozen subject lines in its revised redactions," after Plaintiff filed its motion, and the subject lines that remain redacted "reflect the content of specific deliberations." Siehndel Decl. ¶ 75.

The "agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Shapiro v. U.S. Dep't of Just.*, 893 F.3d 796, 799 (D.C. Cir. 2018) (citation omitted). Here, it is both logical and plausible that the remaining email subject lines reflect the deliberative process. Email senders typically place the topic or bottom-line conclusion of an email in the subject line. Consequently, when discussing an ongoing proceeding, the subject line may reveal a participant's thought process or how they are inclined to rule. Indeed, other courts in this district have similarly held that the Government complied with FOIA in withholding email subject lines where disclosure would reveal exempt information. *See, e.g.*, *Pub. Citizen, Inc. v. U.S. Dep't of Educ.*, 388 F. Supp. 3d 29, 42 (D.D.C. 2019); *Khatchadourian v. DIA*, 597 F. Supp. 3d 96, 110–11 (D.D.C. 2022).

   iv. Communication between APJs

Fourth, Plaintiff argues that Defendant improperly withheld an email in which APJ Bisk forwarded APJ Bonilla an article that was published online. *See* Pl.'s Reply at 24. According to the *Vaughn* Index, "[t]he redacted comments relate the email to issues raised in a pending IPR decision," and "reflect[] the views of APJ Bisk on issues presented" in that proceeding. *Vaughn* Index at 18. This suffices to establish that the redacted information is protected under the deliberative process privilege because it both clarifies that the comments related to a *pending* proceeding, and were therefore predecisional, and provides that the comments expressed one APJ telling another APJ their "view" on the "issues presented" in a proceeding before them, making it part of the "consultative process," *Campaign Legal Ctr*, 34 F.4th at 23 (quotation omitted).

Plaintiff contends that Defendant "has not met its burden of establishing . . . that the e-mail contents were pre-decisional (much less deliberative)." Pl.'s Reply at 24. But that

"burden" is not onerous; the agency's justification must only appear "'logical' or 'plausible.'" *Shapiro*, 893 F.3d at 799 (citation omitted). Plaintiff fails to explain why Defendant's representations that the redacted comments pertained to a pending proceeding and expressed an APJ's view on that proceeding were not "logical" or "plausible."

        *v.     Communications between agency officials and agency attorneys; attorney work product*

Finally, Plaintiff argues that records reflecting communications between agency officials and the agency's general counsel as well as work product regarding the IPRs were improperly withheld. Defendant claims it withheld this information under the attorney-client privilege and work product doctrines. Def.'s Cross Mot. at 18–21. Exemption 5 encompasses both. *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 462 (D.C. Cir. 2014), *superseded by statute on other grounds* 5 U.S.C. § 552(b)(5). Plaintiff represents in its Reply that it "does not object" to the withholding of this information on attorney-client privilege or work product grounds, but maintains that it *does* object "on the basis of the deliberative process exemption." Pl.'s Reply at 23 n.12. That position makes no sense. In conceding that the information was properly withheld under the attorney-client privilege and work product doctrine, Plaintiff has conceded that withholding under Exemption 5 was proper.

    **B.**    **Internal Credit Forms**

Plaintiff also argues that Defendant incorrectly withheld two forms that APJs submitted to claim production credit for work on cases under Exemption 6, which covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In its *Vaughn* Index, Defendant explained that it withheld these forms pursuant to both Exemptions 5 and 6 because they both "reflect the pre-decisional meeting notes for a specific IPR" and constitute an "internal personnel matter."

*Vaughn* Index at 6, 49. In its Reply, Plaintiff conceded that, so long as "the APJ was not soliciting advice on the IPR beyond [the] panel," it "has no objection to" withholding under Exemption 5. Pl.'s Reply at 26. Nothing in the *Vaughn* Index or elsewhere in the record indicates the forms included "soliciting advice on the IPR beyond [the] panel." Consequently, the court will accept Plaintiff's concession that these forms were properly withheld under Exemption 5.

### D. Segregation of Nonexempt Information

Lastly, Plaintiff contends that Defendant failed to "take reasonable steps necessary to segregate and release nonexempt information" under FOIA. 5 U.S.C. § 552(a)(8)(A)(ii)(II). "Producing segregable information is an essential ingredient for agencies' FOIA compliance." *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 114 (D.D.C. 2019). "Even if an exemption covers an entire agency record, the agency still must release any reasonably segregable information within the record that could be disclosed without causing reasonably foreseeable harm to an interest that the exemption protects." *Leopold v. U.S. Dep't of Just.*, 94 F.4th 33, 37 (D.C. Cir. 2024).

"Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) (citation omitted). To "demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability." *Johnson v. Exec. Off. for U.S. Atty's*, 310 F.3d 771, 776 (D.C. Cir. 2002) (citation omitted). An agency may satisfy this requirement by describing the documents withheld and why in its *Vaughn* index and providing affidavits explaining the process used to determine that no further information could be released. *See id.*

Defendant has done so here.  In its *Vaughn* index, it enumerated each record that was redacted in whole or in part and explains why it chose to do so.  *See, e.g.*, *Vaughn* Index at 13 (providing that the document "is a case from the Federal Circuit," was withheld "in its entirety because it elucidates legal arguments of importance to APJ Bisk as she considered and discussed the legal issue addressed in Document 5 relevant to a then-pending IPR," and explaining the "specific harm from releasing the information," including "chilling future discussions between APJ's").  Moreover, Defendant's declaration provides that its "FOIA Office reviewed each page and each line of each responsive record to identify reasonably segregable, non-exempt information, and released all such information."  Siehndel Decl. ¶ 87.  "The material being withheld has been limited to the minimum necessary," and "is so inextricably intertwined with any disclosable information that it could not be meaningfully segregated for release without destroying the integrity of the document or disclosing the substance of the records."  *Id.*

Plaintiff argues that Defendant's blocks of full-page redactions and redactions of title lines, senders, and recipients of emails demonstrate that it has not fully segregated nonexempt portions of responsive records.  Pl.'s Mot. at 27–28.  Defendant, however, declared that it reviewed "each line" and determined that it was withholding the minimum information necessary to avoid disclosing exempt information. Siehndel Decl ¶ 87.  And it makes sense that title lines along with senders and recipients of emails might confer exempt information in some situations, *see supra* at 10–11; the mere fact that they were redacted does not undermine Defendant's declaration.

## IV. CONCLUSION

For the foregoing reasons, the court will DENY Plaintiff's Motion for Summary Judgment, ECF No. 15, and GRANT Defendant's Cross Motion for Summary Judgment, ECF No. 21. An Order will accompany this Memorandum Opinion.

Date: September 25, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge